# Illinois Official Reports

## Supreme Court

*McCormick v. Robertson*, 2015 IL 118230

| | |
|---|---|
| Caption in Supreme Court: | JOSHUA A. McCORMICK, Appellee, v. ALEXUS N. ROBERTSON, Appellant. |
| Docket No. | 118230 |
| Filed | March 19, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Champaign County, the Hon. Brian J. McPheters, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ronald S. Langacker, of Urbana, for appellant.<br>Paul R. Wilson, Jr., of Rantoul, for appellee. |
| Justices | JUSTICE KARMEIER delivered the judgment of the court, with opinion.<br>Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion. |

¶ 1     At issue on this appeal is whether the circuit court of Champaign County erred when it vacated as void a prior "judgment of parentage, custody [and] related matters" and dismissed the father's complaint with prejudice on the grounds that at the time the cause of action was brought, the court lacked subject matter jurisdiction to hear and decide it because the provisions of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) (750 ILCS 36/101 *et seq.* (West 2010)) had not been satisfied. On review, the appellate court vacated the circuit court's judgment, holding that compliance with the statute was not a prerequisite to the court's jurisdiction, that the circuit court had possessed subject matter jurisdiction, and that the circuit court therefore erred when it subsequently vacated its earlier ruling as void and dismissed the father's complaint. 2014 IL App (4th) 140208. We granted leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2013). For the reasons that follow, we now affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3     Joshua A. McCormick and Alexus N. Robertson met in Missouri in 2008. McCormick was and remains a resident of Illinois. Robertson was a resident of Missouri. A brief relationship between the two resulted in a child, L.M., who was born in Missouri on April 23, 2009.

¶ 4     In early 2010, McCormick filed a complaint in the circuit court of Champaign County pursuant to the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2010)) to obtain an order establishing the existence of a father-child relationship with L.M. and to obtain joint custody of the child. McCormick chose Champaign County as the venue because section 9(b) of the Parentage Act (750 ILCS 45/9(b) (West 2010)) allows parentage actions to be brought "in the county in which any party resides or is found," and Champaign County is where McCormick lived.

¶ 5     Robertson was furnished with a copy of the complaint on January 15, 2010. Shortly thereafter, she filed a written entry of appearance. That document, prepared by McCormick's attorney and signed by Robertson, stated that Robertson was waiving "all manner of Summons and process" and submitting to the court's jurisdiction.

¶ 6     A hearing on McCormick's complaint was held January 19, 2010. Both McCormick and Robertson attended, with Robertson proceeding *pro se.* During the hearing, the parties represented to the court that they had entered into a written joint parenting agreement. Under the terms of the agreement, McCormick and Robertson were to have joint custody of L.M., with Robertson serving as the primary residential custodian. The agreement also contained a visitation schedule to be implemented upon McCormick's return from active duty military service. The issue of child support was reserved.

¶ 7     The parties presented the joint agreement to the court for consideration. On February 8, 2010, the court entered its "judgment of parentage, custody [and] related matters." That ruling found that the court had jurisdiction over the parties and the subject matter, that McCormick had been domiciled in the state of Illinois for at least 90 days preceding the date of the judgment, that L.M. had been born in Missouri the previous year and that McCormick had voluntarily acknowledged that he was the child's father. The judgment also approved and incorporated by reference the parties' joint parenting agreement. One of the terms of that

agreement was that the parties had submitted themselves to "the jurisdiction of the State of Illinois" and that their agreement would be "construed in accordance with the laws of the State of Illinois" unless they otherwise agreed.

¶ 8        Following entry of the judgment, McCormick began a tour of duty with the United States Marine Corps. He served in Okinawa, Japan, and Afghanistan, eventually separating from active military duty on June 21, 2012. Upon leaving the service, he was able to visit L.M. frequently. The visitations took place in Missouri, where Robertson continued to reside.

¶ 9        Things changed in November 2012. That month, Robertson moved to Las Vegas, Nevada, with her parents and took L.M. with her. McCormick believed that Robertson's actions violated the court's judgment and the terms of the joint parenting agreement incorporated therein and complained that Robertson had effectively precluded him from visiting the child. Accordingly, in November 2013, he returned to the circuit court of Champaign County to obtain relief. Specifically, he filed a "motion to establish visitation" and asked the court to order Robertson to show cause why she should not be held in contempt of court for violating the terms of the court's February 8, 2010, judgment.

¶ 10       A hearing was held by the court on December 3, 2013. During the course of that hearing, the court indicated that it would not "intervene in a joint custody situation," nor would it enter an order to show cause. It advised counsel, however, that it would be willing to entertain a motion to modify the custodial arrangements and to schedule a prompt hearing on any such motion.

¶ 11       The following day, December 4, 2013, McCormick filed a motion to terminate the joint parenting agreement, to terminate joint custody, and to award custody of L.M. to him. The matter was set for hearing on December 17. Before the hearing took place, however, Robertson initiated a separate legal action in the state of Nevada. In that proceeding, filed December 11, 2013, Robertson asserted that the February 8, 2010, judgment entered by the circuit court of Champaign County was "void due to lack of UCCJEA [Uniform Child-Custody Jurisdiction and Enforcement Act (750 ILCS 36/101 *et seq.* (West 2010))] subject matter jurisdiction" and requested that the Nevada courts revisit the issues of paternity, custody and support. By way of relief, Robertson's complaint prayed for an order confirming that McCormick was the child's father; awarding Robertson and McCormick joint custody, but with primary physical custody going to Robertson; requiring McCormick to pay a specified portion of his gross income as child support; and specifying that McCormick and Robertson were to split the cost of the child's medical and dental insurance.

¶ 12       In tandem with her new legal action in Nevada, Robertson filed a motion in the circuit court of Champaign County asking that the court vacate its February 8, 2010, judgment and dismiss the Illinois proceedings for the same reason she asked the Nevada court to declare the Illinois judgment void, namely, that under the Uniform Child-Custody Jurisdiction and Enforcement Act (750 ILCS 36/101 *et seq.* (West 2010)), the Illinois court lacked and continued to lack subject matter jurisdiction over the controversy. In the alternative, Robertson asserted that the child's home state was now Nevada, that Nevada was now a more appropriate forum for the dispute and that under the UCCJEA, the Illinois proceeding should be stayed until the Nevada and Illinois courts communicated with one another regarding which state should hear the case from this point forward.

¶ 13     A hearing was convened by the Illinois court on December 17, 2013. At that hearing, the court set a schedule for the parties to submit briefs regarding applicability of the UCCJEA and the court's subject matter jurisdiction. It also set the matter for further hearing on March 3, 2014.

¶ 14     Prior to the March hearing date, and before any ruling on the UCCJEA question had been made, the judges presiding over the Illinois and Nevada cases participated in a telephone conference call pursuant to the statute. The parties and their lawyers were present. At the conclusion of the conference, which took place on February 6, 2014, the Nevada judge entered an order in the Nevada proceeding holding, among other things, that strict compliance with the provisions of the UCCJEA is necessary in order to confer subject matter jurisdiction on a court in child custody matters; those requirements were not satisfied with respect to Illinois; and the February 8, 2010, order entered by the circuit court in Illinois was therefore void. The court further held that Nevada was now the child's home state within the meaning of the UCCJEA; that "Nevada shall handle all aspects of child custody"; that the "parenting contract" between the parties was void; and that McCormick was required to file an answer and counterclaim in the Nevada proceeding within 20 days and submit a financial disclosure form. The Nevada court also referred McCormick and Robertson to family mediation and made provisions for McCormick to visit the child in Las Vegas.

¶ 15     The following month, the Illinois judge presiding over the original action in Champaign County entered a written order finding that McCormick's paternity was undisputed and agreeing with the Nevada court that the provisions of the UCCJEA had not been satisfied with respect to Illinois, that Nevada should be considered to be the child's home state and that "Illinois neither had jurisdiction for custody and visitation purposes nor does it currently have such jurisdiction, as to the home state of the minor." The order went on to declare: (1) that "the State of Illinois did not have jurisdiction over the minor child, [L.M.], pursuant to the UCCJEA at the time the [j]udgment was entered on February 8th, 2010"; (2) that "[b]ecause no jurisdiction existed over the child pursuant to the UCCJEA, the Joint Parenting Order entered on February 8[th], 2010 is void"; (3) "[t]hat the original Petition filed by [McCormick] on January 15[th], 2010[,] is dismissed with prejudice"; (4) "[t]hat the State of Nevada has exclusive and continuing jurisdiction over the minor child pursuant to the UCCJEA of both jurisdictions"; and (5) that "all further proceedings concerning these parties and subject matter will take place in [the case pending in] Nevada."

¶ 16     McCormick appealed, arguing that the Illinois court was wrong to vacate its February 8, 2010, order as void for lack of subject matter jurisdiction based on the provisions of the UCCJEA. The appellate court agreed with McCormick, holding that with the exception of the power to review administrative matters, which is conferred by statute, the subject matter jurisdiction of the Illinois courts is determined exclusively by the Illinois Constitution. It is not defined by and cannot be constrained through legislative enactment. Because article VI, section 9, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 9), grants circuit courts "original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction," and because the claims raised by McCormick's complaint presented a justiciable matter, the appellate court concluded that the circuit court had subject matter jurisdiction to consider those claims, regardless of whether the criteria set forth in the UCCJEA were satisfied. The appellate court therefore vacated the circuit court's judgment declaring its February, 2010, order void and dismissing McCormick's complaint with prejudice. 2014 IL

- 4 -

App (4th) 140208. The matter now comes before us for review following our decision to allow a petition for leave to appeal filed by Robertson pursuant to Supreme Court Rule 315(a) (Ill. S. Ct. R. 315(a) (eff. July 1, 2013)).

ANALYSIS

Whether a circuit court has subject matter jurisdiction to entertain a claim presents a question of law which we review *de novo. Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 26.

The concept of subject matter jurisdiction, as it has existed since promulgation of the Judicial Article of 1964, was set forth by our court in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002). As we explained in that case, and as the appellate court correctly recognized here, " 'subject matter jurisdiction' refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution. *Id.* at 334.

Under section 9 of article VI of the Illinois Constitution, the jurisdiction of circuit courts extends to all "justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office." Ill. Const. 1970, art. VI, § 9. So long as a matter brought before the circuit court is justiciable and does not fall within the original and exclusive jurisdiction of our court, the circuit court has subject matter jurisdiction to consider it. See *In re M.W.*, 232 Ill. 2d 408, 424 (2009).

The Illinois Constitution does not define the term "justiciable matters." Whether a justiciable matter is presented must be determined by the courts on a case-by-case basis. *Ferguson v. Patton*, 2013 IL 112488, ¶ 22. The courts have held that the overarching purpose of the justiciability requirement is to reserve the exercise of judicial authority for situations where an actual controversy exists. *Id.* ¶ 23. Consistent with this view, a matter is considered justiciable when it presents "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335. "Actual" in this context:

> " 'does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]' (Internal quotation marks omitted.)" *Ferguson v. Patton*, 2013 IL 112488, ¶ 23 (quoting *National Marine, Inc. v. Illinois Environmental Protection Agency*, 159 Ill. 2d 381, 390 (1994)).

Compliance with statutory prerequisites involves an altogether different set of values. Adherence to statutory requirements is vital to the rule of law, and it is beyond doubt that actions taken by judges in contravention of such requirements are subject to challenge when

raised in an appropriate way at an appropriate time. As former Chief Justice Miller aptly stated, "the constitutional source of a circuit court's jurisdiction does not carry with it a license to disregard the language of a statute." *In re M.M.*, 156 Ill. 2d 53, 75 (1993) (Miller, C.J., concurring, joined by Bilandic, J.). Except when the proceeding is one for administrative review and involves the exercise of special statutory jurisdiction (see, *e.g.*, *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2014 IL 116642, ¶¶ 9-10), however, the fact that the litigants or the court may have deviated from requirements established by the legislature does not operate to divest the court of jurisdiction. See *Belleville Toyota*, 199 Ill. 2d at 340-41; *In re Luis R.*, 239 Ill. 2d 295, 300-02 (2010).

¶ 23 Similarly, while the General Assembly may create new justiciable matters through legislation that creates rights or duties that have no counterpart in common law or at equity, our court has made clear that the establishment of a new justiciable matter neither extends nor constrains the court's jurisdiction. It could not, for except in the area of administrative review, the jurisdiction of the circuit court flows from the constitution. *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 553 (2003). So long as a claim meets the requirements for justiciability, it will be sufficient to invoke the court's subject matter jurisdiction, even if the claim is defectively stated. *Belleville Toyota*, 199 Ill. 2d at 340. The *only* consideration is whether it falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present. *In re Luis R.*, 239 Ill. 2d at 301; *In re M.W.*, 232 Ill. 2d at 425-26.

¶ 24 The jurisdictional challenge raised by Robertson in this case is premised on section 201 of the UCCJEA. That statute provides:

"(a) Except as otherwise provided in Section 204, a court of this State has jurisdiction to make an initial child-custody determination only if:

(1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) a court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under Section 207 or 208, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

(B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under Section 207 or 208; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

(b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this State.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination." 750 ILCS 36/201 (West 2010).

¶ 25    As a preliminary matter, we note that this statute, by its terms, applies only to proceedings involving the initial determination of child custody. Although child custody was certainly an important component of the proceeding brought by McCormick in the circuit court of Champaign County, equally important was McCormick's desire to obtain legal confirmation that he was L.M.'s father pursuant to the Parentage Act. Champaign County was unquestionably an appropriate forum for that determination. No possible basis exists for challenging the authority of the circuit court of Champaign County to rule on that aspect of the case. To the extent that the court's subsequent order invalidated its initial parentage determination and dismissed McCormick's parentage claim, it was clearly erroneous, and the appellate court properly set it aside.

¶ 26    The appellate court also acted properly when it set aside the circuit court's judgment invalidating, on voidness grounds, its prior ruling regarding child custody and incorporating the parties' joint parenting agreement. The circuit court's conclusion that the earlier order was void was based exclusively on its conclusion that McCormick's claim did not meet the requirements specified by section 201 of the UCCJEA (750 ILCS 36/201 (West 2010)). The appellate court did not dispute that McCormick's claim failed to meet the statutory criteria with respect to initial child-custody determinations. As it properly recognized, however, the circuit court's decision to proceed notwithstanding those deficiencies may have been error, but it was not beyond the circuit court's jurisdiction.

¶ 27    To be sure, section 201 does speak in terms of "jurisdiction" when describing the conditions which must be met before an Illinois court will consider and decide the question of initial child custody. As used in the statute, however, "jurisdiction" must be understood as simply a procedural limit on when the court may hear initial custody matters, not a precondition to the exercise of the court's inherent authority. It could not be more, for as we have held, that authority emanates solely from article VI, section 9, of our constitution (Ill. Const. 1970, art. VI, § 9). See *In re Luis R.*, 239 Ill. 2d at 304; *Siegel v. Siegel*, 84 Ill. 2d 212, 221 (1981).

¶ 28    The determination of who should have custody of L.M. clearly presented a justiciable matter. It therefore fell within the subject matter jurisdiction of the circuit court of Champaign County. Once a court has subject matter jurisdiction over a matter, its judgment will not be rendered void nor will it lose jurisdiction merely because of an error or impropriety in its determination of the facts or application of the law. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998); *McCarthy v. Pointer*, 2013 IL App (1st) 121688, ¶ 13. Accordingly, regardless of whether the circuit court should have proceeded to consider the custody issue on the merits in this case, it had subject matter jurisdiction to entertain McCormick's complaint and to enter its February 8, 2010, "judgment of parentage, custody [and] related matters." The circuit court therefore erred in vacating that order as void for lack of subject matter jurisdiction four years later and retroactively dismissing McCormick's complaint with prejudice.

## CONCLUSION

For the foregoing reasons, we agree with the appellate court that the circuit court erred when it vacated its February 8, 2010, order on the grounds that it was void and dismissed McCormick's January 15, 2010, complaint with prejudice. The judgment of the appellate court is therefore affirmed.

Affirmed.