732 A.2d 528 (1999)
323 N.J. Super. 118
Steven J. CASPI, Ronald W. Jonas, Arden Jeffrey Cone III, and Laurel Barrie, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants,
v.
The MICROSOFT NETWORK, L.L.C., and Microsoft Corporation, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1999.
Decided July 2, 1999.
*529 Steven L. Wittels, Armonk, NY and Jeremy Heisler of the New York bar, Kew Gardens, NY, admitted pro hac vice, for plaintiffs-appellants (Mr. Wittels and Mr. Heisler, on the brief).
Charles B. Casper, Philadelphia, PA, for defendants-respondents (Montgomery, McCracken, Walker & Rhoads, and Connell, Foley & Geiser, Cherry Hill, attorneys; Mr. Casper, Stacy Alison Fols, Cherry Hill, and Richard D. Catenacci, Ringoes, on the brief).
Before Judges LONG, KESTIN and WEFING.
The opinion of the court was delivered by KESTIN, J.A.D.
We are here called upon to determine the validity and enforceability of a forum selection clause contained in an on-line subscriber agreement of the Microsoft Network (MSN), an on-line computer service. The trial court granted defendants' motion to dismiss the complaint on the ground that the forum selection clause in the parties' contracts called for plaintiffs' claims to be litigated in the State of Washington. Plaintiffs appeal. We affirm.
The amended class action complaint[1] in eighteen counts sought divers relief against two related corporate entities, The Microsoft Network, L.L.C. and Microsoft Corporation (collectively, Microsoft).[2] Plaintiffs asserted various theories including breach of contract, common law fraud, and consumer fraud in the way Microsoft had "rolled over" MSN membership into more expensive plans. Among the claims was an accusation that Microsoft had engaged in "unilateral negative option billing," a practice condemned by the attorneys general of twenty-one states, including New Jersey's, with regard to a Microsoft competitor, America Online, Inc. Under the practice as alleged, Microsoft, without notice to or permission from MSN members, unilaterally charged them increased membership fees attributable to a change in service plans.
The four named plaintiffs are members of MSN. Two reside in New Jersey; the others in Ohio and New York. Purporting to represent a nationwide class of 1.5 million similarly aggrieved MSN members, plaintiffs, in May 1997, moved for multistate class action certification. See R. 4:32.
Shortly thereafter, defendants moved to dismiss the amended complaint for lack of jurisdiction and improper venue by reason of the forum selection clause which, defendants contended, was in every MSN membership agreement and bound all the named plaintiffs and all members of the class they purported to represent. That clause, paragraph 15.1 of the MSN membership agreement, provided:
This agreement is governed by the laws of the State of Washington, USA, and you consent to the exclusive jurisdiction and venue of courts in King County, Washington in all disputes arising out of or relating to your use of MSN or your MSN membership.
Plaintiffs cross-moved, inter alia, to strike a certification submitted in support of defendants' *530 motion to dismiss and to compel the deposition of the certificant.
On November 13, 1997, Judge Fitzpatrick, in a written opinion, expressed his reasons for dismissing the complaint based upon the forum selection clause. Given that conclusion, plaintiffs' cross-motions were denied perforce, and plaintiffs' motion to certify the class was denied as moot. Conforming orders were entered on the same date. On December 19, 1997, Judge Fitzpatrick entered an order modifying a passage in his November 13 opinion.
The background of the matter was depicted in the amended opinion:
Before becoming an MSN member, a prospective subscriber is prompted by MSN software to view multiple computer screens of information, including a membership agreement which contains the above clause. MSN's membership agreement appears on the computer screen in a scrollable window next to blocks providing the choices "I Agree" and "I Don't Agree." Prospective members assent to the terms of the agreement by clicking on "I Agree" using a computer mouse. Prospective members have the option to click "I Agree" or "I Don't Agree" at any point while scrolling through the agreement. Registration may proceed only after the potential subscriber has had the opportunity to view and has assented to the membership agreement, including MSN's forum selection clause. No charges are incurred until after the membership agreement review is completed and a subscriber has clicked on "I Agree."
The trial court observed:
Generally, forum selection clauses are prima facie valid and enforceable in New Jersey. See McNeill v. Zoref, 297 N.J.Super. 213, 687 A.2d 1052 (App.Div. 1997). New Jersey courts will decline to enforce a clause only if it fits into one of three exceptions to the general rule: (1) the clause is a result of fraud or "overweening" bargaining power; (2) enforcement would violate the strong public policy of New Jersey; or (3) enforcement would seriously inconvenience trial. Wilfred MacDonald, Inc. v. Cushman, Inc., 256 N.J.Super. 58, 606 A.2d 407 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992). The burden falls on the party objecting to enforcement to show that the clause in question fits within one of these exceptions. Id. Plaintiffs have failed to meet that burden here.
Judge Fitzpatrick correctly discerned that
New Jersey follows the logic of the United States Supreme Court decision in Carnival Cruise Lines v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). * * * In Carnival, cruise ship passengers were held to a forum selection clause which appeared in their travel contract. The clause enforced in Carnival was very similar in nature to the clause in question here, the primary difference being that the Carnival clause was placed in small print in a travel contract while the clause in the case sub judice was placed on-line on scrolled computer screens.
The trial court opinion went on to analyze plaintiffs' contentions:
Plaintiffs' consent to MSN's clause does not appear to be the result of fraud or overweening bargaining power. In New Jersey, fraud consists of (1) material misrepresentation of a past or present fact; (2) knowledge or belief by the declarant of its falsity; (3) an intention that the recipient rely on it; (4) reasonable reliance by the recipient; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 691 A.2d 350 (1997). Plaintiffs have not shown that MSN's forum selection clause constitutes fraud. The clause is reasonable, clear and contains no material misrepresentation.
Further, plaintiffs were not subjected to overweening bargaining power in dealing with Microsoft and MSN. The *531 Supreme Court has held that a corporate vendor's inclusion of a forum selection clause in a consumer contract does not in itself constitute overweening bargaining power. Carnival, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622. In order to invalidate a forum selection clause, something more than merely size difference must be shown. Id. A court's focus must be whether such an imbalance in size resulted in an inequality of bargaining power that was unfairly exploited by the more powerful party. See, e.g., Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905 (3d Cir. 1988), cert. denied, 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989).
Plaintiffs have shown little more than a size difference here. The on-line computer service industry is not one without competition, and therefore consumers are left with choices as to which service they select for Internet access, e-mail and other information services. Plaintiffs were not forced into a situation where MSN was the only available server. Additionally, plaintiffs and the class which they purport to represent were given ample opportunity to affirmatively assent to the forum selection clause. Like Carnival, plaintiffs here "retained the option of rejecting the contract with impunity." 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622. In such a case, this court finds it impossible to perceive an overwhelming bargaining situation.
Judge Fitzpatrick opined that application of MSN's forum selection clause did not contravene public policy. He distinguished three cases cited by plaintiffs in support of the contrary proposition: Kubis & Perszyk Assocs. Inc. v. Sun Microsystems, Inc., 146 N.J. 176, 680 A.2d 618 (1996); McNeill v. Zoref, 297 N.J.Super. 213, 687 A.2d 1052 (App.Div.1997); and Param Petroleum Corp. v. Commerce and Indus. Ins. Co., 296 N.J.Super. 164, 686 A.2d 377 (App.Div.1997). In each of these cases, a forum selection clause was held to be invalid or unenforceable for particularized policy reasons not applicable here. On the other hand, Judge Fitzpatrick also noted our holding in Wilfred MacDonald, Inc. v. Cushman, 256 N.J.Super. 58, 606 A.2d 407 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992), that, as a general matter, enforcement of forum selection clauses is not contrary to public policy, a view we now reaffirm.
Finally, Judge Fitzpatrick held that enforcement of the forum selection clause would not inconvenience a trial. Given the fact that the named plaintiffs reside in several jurisdictions and that, if the class were to be certified, many different domestic and international domiciles would also be involved, "the inconvenience to all parties is no greater in Washington than anywhere else in the country."
After reviewing the record in the light of the arguments advanced by the parties, we are in substantial agreement with the reasons for decision articulated by Judge Fitzpatrick. We reject as meritless plaintiffs' arguments on appeal that the terms of the forum selection clause do not prevent plaintiffs from suing Microsoft outside of Washington or, alternatively, that the forum selection clause lacks adequate clarity. The meaning of the clause is plain and its effect as a limiting provision is clear. Furthermore, New Jersey's interest in assuring consumer fraud protection will not be frustrated by requiring plaintiffs to proceed with a lawsuit in Washington as prescribed by the plain language of the forum selection clause. As a general matter, none of the inherent characteristics of forum selection clauses implicate consumer fraud concepts in any special way. If a forum selection clause is clear in its purport and has been presented to the party to be bound in a fair and forthright fashion, no consumer fraud policies or principles have been violated. Cf. id. at 63-64, 606 A.2d 407. Moreover, as a matter of policy interest and apart from considerations bearing upon the choice-of-law provision in the forum selection clause, *532 plaintiffs have given us no reason to apprehend that the nature and scope of consumer fraud protections afforded by the State of Washington are materially different or less broad in scope than those available in this State.
The only viable issues that remain bear upon the argument that plaintiffs did not receive adequate notice of the forum selection clause, and therefore that the clause never became part of the membership contract which bound them. A related, alternative argument is that the question of notice is a factual matter that should be submitted to a jury. Defendants respond by arguing that 1) in the absence of fraud, a contracting party is bound by the provisions of a form contract even if he or she never reads them; 2) this clause met all reasonable standards of conspicuousness; and 3) the sign-up process gave plaintiffs ample opportunity to review and reject the agreement. Defendants also contend that notice is a question of law, decidable by a court, not a jury.
The holding in Carnival Cruise Lines v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), does not dispose of the notice question because the plaintiffs there had "essentially ... conceded that they had notice of the forum-selection provision[,]" by stating that they "`[did] not contest ... that the forum selection clause was reasonably communicated to [them], as much as three pages of fine print can be communicated.'" Id. at 590, 111 S.Ct. at 1525, 113 L.Ed.2d at 630. The dissenting justices described the format in which the forum selection clause had been presented as "in the fine print on the back of the [cruise] ticket." Id. at 597, 111 S.Ct. at 1529, 113 L.Ed.2d at 634 (Stevens, J., dissenting).
The scenario presented here is different because of the medium used, electronic versus printed; but, in any sense that matters, there is no significant distinction. The plaintiffs in Carnival could have perused all the fine-print provisions of their travel contract if they wished before accepting the terms by purchasing their cruise ticket. The plaintiffs in this case were free to scroll through the various computer screens that presented the terms of their contracts before clicking their agreement.
Also, it seems clear that there was nothing extraordinary about the size or placement of the forum selection clause text. By every indication we have,[3] the clause was presented in exactly the same format as most other provisions of the contract. It was the first item in the last paragraph of the electronic document. We note that a few paragraphs in the contract were presented in upper case typeface, presumably for emphasis, but most provisions, including the forum selection clause, were presented in lower case typeface. We discern nothing about the style or mode of presentation, or the placement of the provision, that can be taken as a basis for concluding that the forum selection clause was proffered unfairly, or with a design to conceal or de-emphasize its provisions. To conclude that plaintiffs are not bound by that clause would be equivalent to holding that they were bound by no other clause either, since all provisions were identically presented. Plaintiffs must be taken to have known that they were entering into a contract; and no good purpose, consonant with the dictates of reasonable reliability in commerce, would be served by permitting them to disavow particular provisions or the contracts as a whole. See Rudbart v. North Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 351-53, 605 A.2d 681 (referring to the principle that a contracting party may be bound by the terms of a form contract even if he or she has never read them), cert. denied, 506 U.S. 871, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992).
The issue of reasonable notice regarding a forum selection clause is a question *533 of law for the court to determine. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir.1995); Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905, 908 (3d Cir.1988), petition for cert. dismissed, 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989), abrogated on other grounds, Lauro Lines, S.R.L. v. Chasser, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). We agree with the trial court that, in the absence of a better showing than has been made, plaintiffs must be seen to have had adequate notice of the forum selection clause. The resolution of this notice issue, at this stage of the litigation between plaintiffs and defendants must, of course, be seen to be without prejudice to any showing either party may have the opportunity to make in another jurisdiction in a plenary proceeding on the contract regarding issues apart from the validity and enforceability of the forum selection clause.
Affirmed.
NOTES
[1] The complaint was initially filed on February 24, 1997. The "first amended complaint" was filed on March 5, 1997.
[2] Defendants' March 26, 1997 petition to remove the matter to the U.S. District Court for the District of New Jersey was withdrawn on April 24, 1997.
[3] We have not considered the CD-ROM version of the contract, presented in the record on appeal, since none of the present plaintiffs used that means in joining MSN.